EASTERN DIS.
*June,* 1834.

BERTHOUD
*vs.*
GORDON, FORSTALL & CO.

## BERTHOUD *vs.* GORDON, FORSTALL, & CO.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where a mercantile firm is part owner of a steamboat and acts as the agent of a co-proprietor at a distance to insure his interest therein, and afterwards discontinues such insurance without any instructions from him, and the boat is lost, the firm is liable for the amount of such interest uninsured.

And the circumstance that the firm rendered an account current to the co-proprietor before the loss of the boat in which the charge of the premium for insurance is omitted and no objection made, will not be considered as notice of a discontinuance of the agency to insure so as to excuse the party from his liability.

EASTERN DIS.
June, 1834.
═══════
BERTHOUD
vs.
GORDON, FOR-
STALL & CO.

The plaintiff residing at Shippingport, in Kentucky, was joint owner with the defandants and one T. W. Bakewell, of Cincinnati of the Steamboat Hercules. He charges in his petition that said boat was sent to New-Orleans to run in the tow-boat business between that city and the Balize in the month of April 1826, when the defendants were instructed to cover the inerests of the petitioner by insurance, being valued at five thousand dollars, which they were to renew every six months from that date. That in the summer of 1827, said boat wanting some repairs was sent to Shippingport for that purpose. The defendants took out a policy covering said interest every six months, and had her insured on leaving New-Orleans, but when she returned from Kentucky in December 1827, they discontinued any further insurance of the plaintiff's interest without any express instructions on the subject; still continuing as before, to insure their own interest in her. She continued rnnning in the tow-boat business until December 1828, when she was lost by the perils of the river. The plaintiff claims the amount of his interest amounting to five thousand dollars, which he alleges was lost by the negligence of the defendants to insure his interest therein as they were bound to do.

The defendants pleaded the general issue.

The facts of the case show that the defendants were commission merchants in New-Orleans, and kept the accounts of the Hercules and with whom the plaintiff had a regular account and business. They effected and paid the insurance on plaintiff's interest in the Hercules up to the 30th May 1827. In an account current rendered by the defendants on the 31st August 1827, the premium for the insurance of plaintiff's interest in the Hercules to Louisville, is charged. The next account current was rendered the 30th May 1828, to the plaintiff in which there was no charge for insurance.

On the 28th December 1827 soon after the return of the boat to New-Orleans, the defendants wrote to T. W. Bakewell in Cincinnati also a joint owner, in which they say; "In regard to the insurance on the Hercules we can only refer you to what we have already written. We have paid the amount

EASTERN DIS.
*June,* 1834.

BERTHOUD
*vs.*
GORDON FOR-
STALL & CO.

conceiving that your having made no objection to the first charge made and your not directing us to discontinue the insurance was sufficient authority for us to do so, and we really cannot see any reason why we should suffer the loss of this amount. We put it to you whether *once* being directed to cover a property at risk under our charge, (the same risk continuing at the expiration of the temporary policy and no new instructions being sent) you would not consider yourself in duty bound to renew the insurance. We conceive that any prudent agent so situated would act as we have done, and we are quite sure that we should not hesitate to approve any one so acting when our property was concerned. We of course have not insured any thing beyond our own interest in this boat, presuming that both yourself and Mr. Berthoud will advise us if we are required to do so any more." Their is no evidence that Mr. Berthoud was apprised of the contents of this letter, although the plaintiffs attempted to show it. After the loss of the boat the defendants wrote to the plaintiff as follows, under date of the 29th February 1829. "We trust that Mr. Briggs will have convinced you that no blame can attach to us for not having insured your interest in the steamboat Hercules. A reference to the account current of the steamboat Hercules rendered you on the 30th May last and to your own account with us to the same date will satisfy you that all insurance on your account ceased on the arrival of that boat with you. On her return to this place we advised Mr. T. W. Bakewell that unless instructed to do so we did not feel authorised to insure either on your account or his, and since then your accounts have been rendered accordingly without any remarks from you, which led us to the conclusion when the accident happened that you as well as Mr. B. were fully covered."

*J. K. West* a witness for defendants states that he was secretary to the Louisiana State Insurance Company in December 1827 when the defendants insured their interest amounting to eight thousand dollars in the Hercules and omitted to insure for plaintiff for the first time. Witness observed to the person applying that the previous policy covering insurance

EASTERN DIS.
*June*, 1834

BERTHOUD
*vs.*
GORDON FOR-
STALL & CO.

for the other owners had also expired, and that one of the defendants replied they had no instructions to effect insurance to cover any other interest than their own.

The district judge was of opinion that the previous circumstances of the case made it the positive duty of the defendants to insure for the plaintiff, and that defendants have not shown sufficient reasons to excuse or exonerate them from this duty. The decree must therefore be for the plaintiff for the amount which had been previously insured; less one year's premium and commission. Judgment rendered accordingly. The defendants appealed.

*Pierce* for the plaintiff. Whether the plaintiffs are agents or partners they are liable for not doing for others what they would do for themselves, and should be bound to exercise the same care of the property entrusted to their charge as of their own.

*Eustis* for the defendants; relied on the ground that the defendants having notified the plaintiff by their account current that they had discontinued the insurance of his interest in the steamboat, were thereby exonerated.

2. The defendants were gratuitous agents and not responsible according to the strictness of the law of principal and agent.

MATHEWS, J., delivered the opinion of the court.

In this case the plaintiff claims remuneration for loss and damage which it is alleged he had suffered by the negligence and misconduct of the defendants, his agents, in not insuring his interest in a certain steamboat called the Hercules, which was employed in towing vessels between New-Orleans and the Balize. He obtained judgment in the court below from which the defendants appealed.

The principal facts of the case are as follows. The boat in question was owned in unequal portions by the defendants, the plaintiff, and one Bakewell. The interest of the plain-

EASTERN DIS.
*June*, 1834.

BERTHOUD
*vs.*
GORDON FOR-
STALL & CO.

tiff was estimated at five thousand dollars. Sometime in the year 1826, this boat commenced its employment in the towing business between the places above stated. At that time the interest of the plaintiff was insured by the defendants, who acted as his agents; and this was done at his request. The policies were regularly renewed from six months to six months, from the commencement of the insurance until some time in the summer of 1827, when the boat was sent to be repaired at Shippingport in Kentucky. Previous to her leaving New-Orleans she was insured on this voyage. After being repaired she was sent down the river and commenced the business of towing vessels in pursuance of the use to which she had been formerly appropriated, and was totally lost by the perils of the river on the 26th of December, 1828. After the return of the boat to New-Orleans in 1827, being then repaired, the defendants neglected to insure the interest of the plaintiff, although they took care to insure their own.

The judgment of the District Court as based on these facts is assailed by the counsel for the appellants on two grounds: 1. That they were not the agents of the plaintiff's at the time of the alleged negligence. 2. That if they may be considered as his agents they gave him notice of their having discontinued to insure his interest in the boat, and that he acquiesced in the latter course of conduct.

Neither of these propositions is supported by the evidence in the cause. They were his agents to effect insurance; and, indeed as related to the management of the boat during the time she was employed in towing voyages below New-Orleans and the mouth of the river from 1826, to the summer of 1827, when she was sent to Shippingport for repairs; and in that voyage they assumed the agency to insure the interest of the plaintiff. When did they cease to be his agent? According to our conclusions from the testimony, never until the boat was lost; at least so far as their agency related to effecting insurance. How did they give notice to the co-proprietor that they had ceased to protect his interest by insurances while they were so careful of their own? Not by letter, not by verbal message. But the counsel argues that he had at

*Where a mercantile firm is part owner of a steamboat and acts as the agent of a co-proprietor at a distance to insure his interest therein, and afterwards discontinues such insurance without any instructions from him, and the boat is lost, the firm is liable for the amount of such interest uninsured.*

*And the circumstance that the firm rendered an account current to the co-proprietor before the loss of the boat in which the charge of the premium for insurance was omitted and no objection made, will not be considered as notice of a discontinuance of the agency to insure so as to excuse the party from his liability.*

EASTERN DIS.
June, 1834.

least presumptive notice by the omission of the charge for a premium in one of their accounts current sent to him at Louisville. As argued on the other side, the plaintiff might have overlooked the omission; for a man's attention is not readily drawn to things which do not appear. *Non-entilies* are not apt to be the subject of reflection and thought in the mind of any person. Let us however suppose, that he did notice this omission or difference between this account and others which had been previously rendered, what may have been his conclusion ? The most natural to our minds would be this; my friends and agents have neglected to charge me with the customary premium of insurance. This omission can easily be corrected at some future time. But surely they have not been wholly regardless of my interest entrusted to their charge and care. They have not been such unfaithful agents as to leave me to the risk of losing five thousand dollars, and at the same time be careful to protect themselves against loss whilst we were all interested in the same vessel, periled by fire, by steam, and by hurricanes.

We are unable to discover any thing in the prominent features of this case calculated to distinguish it from that of *Ralston* vs. *Barclay et als* 6 *Martin* 649.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed with costs.