## No. 8658.

### AREA & LYONS VS. RICHARD MILLIKEN.

Where the practice or custom of a factor is to insure consignments of produce, and this is brought to the knowledge of his consignor by uniform charges for insurance in his accounts rendered, the factor will be deemed to have continued that custom until he gives notice to the consignor of the change, and is responsible for any loss, consequent upon his failure to insure, before such notice reaches the consignor.

If the factor has been in the habit of insuring produce without instructions, and he deviates from it without apprising his consignor, and loss ensues, he will be liable.

APPEAL from the Civil District Court, for the Parish of Orleans. *Houston*, J.

---

*Braughn, Buck & Dinkelspiel* and *W. O. Hart* for Plaintiffs and Appellees:

1. A party who has been in the practice of insuring for another is presumed to have had proper authority, and cannot afterward omit doing so without informing the other; he will otherwise be liable himself.   6 M. 649; 6 La. 583; 2 R. 103; 73 Ill. 404; Domat 1, 15, Sec. 4, Art. 4.

2. The attorney is responsible, not only for unfaithfulness in his management but also for his fault or neglect.   R. C. C. 3003.

*Kennard, Howe & Prentiss* for Defendant and Appellant:

1. The plaintiffs sue on a " verbal agreement" to insure the sugar in question consigned to defendant.   The answer is a general denial, coupled with a special denial of any instructions from which such agreement could be inferred.   No agreement has been proved, and the plaintiffs' claim should be rejected.   Courtebray vs. Rils, 9 Rob. 513.

2. The defendant, as factor or mandatory of plaintiffs, in the absence of instructions, which absence is conceded, was bound to follow the customs of the mart and of his office—which were harmonious.   Story on Ageny, §§ 96, 191; C C. 3000; Reano vs. Mayer, 11 Martin, 636; Goodenow vs. Tyler, 7 Mass. 36.   By these customs, in such a case as the one at bar, no insurance was effected by the factor, nor were the goods covered by his open policy, unless special instructions had been given to so cover them.

3. The plaintiffs are presumed to know the usage of a port to which they ship goods for sale; 7 Mass. 36; and are held to have authorized their factor to act accordingly, whether they have or have not actual acquaintance with the rules that govern factors under such circumstances. Sutton vs. Tatham, 10 Ad. & El. 27; Bayliffe vs. Butterworth, 1 Ex. 425; Greaves vs. Legg, 11 Ex. 642; 2 Hurl. & Nor. 210. And if defendant, without such special instructions, had undertaken to insure these goods, he could not have held plaintiffs for the premium. Gilly vs. Berlin, 12 An. 123; Alliance Co. vs. Louisiana Co., 8 La. 11.

The opinion of the Court was delivered by

MANNING, J. The suit is for the value of fifteen hogsheads of sugar, alleged to be twelve hundred dollars, lost by the sinking of the Steamer Exchange in the Atchafalaya River on January 3, 1882. The defendant was the factor of the plaintiffs, who reside at Abbeville. Their business relations commenced in 1879.

The plaintiffs had never instructed the defendant to insure their shipments. No instructions whatever were given concerning this shipment, and no insurance was effected.

There were two routes, or rather three, from Abbeville to New Orleans. Two were all water routes, i. e., by steamer up the Atchafalaya into the Mississippi; or down the Atchafalaya into the Gulf, and thence up the Mississippi. The third was by river and rail, i. e., by steamer to Morgan City and thence by rail. The first two were disused after the Spring of 1881.

The practice of the defendant had been to insure the plaintiffs' shipments by the "all water" routes, and all the shipments prior to the Spring of 1881 had come by those routes. Seven accounts of sales from Dec. 15, 1879, to Feb. 24, 1881, contained charges of insurance at three-quarters per cent. The defendant had insured without instructions, and the plaintiffs had paid the charges for insurance without demur.

Then the mode of transportation was changed, because the "Exchange" plied thereafter only between Abbeville and Morgan, whence the goods came by rail to New Orleans, and the defendant's practice was not to insure produce coming to the city by rail unless expressly ordered.

If there were any consignments that afterwards came by river and rail, upon which no charges for insurance were made, and from which the plaintiffs might have learned that the practice of the defendant was different in the two modes of transportation, the record does not shew them. The defendant has not produced an account, whereon the insurance charges do not appear. The plaintiffs produce two to be noticed presently. But there was a shipment of rice April 6, 1881, probably the first by the river and rail route, and insurance is charged thereon precisely as in all the previous accounts on "all water" ship-

ments. The defendant's book-keeper says this is an error, but the plaintiffs were never so informed.

Two sales were made January 6, 1882, of shipments by river and rail, and no charge for insurance is upon the accounts, but the accounts were not rendered until three days after the Exchange had sunk, and of course were received by the plaintiffs later. So far from affecting them with notice of the defendant's practice not to effect insurance on shipments by that route, the date shews they were not apprised of it until after the disaster which occasioned the loss they are now seeking to recover of him. Indeed, these accounts of sales were sent under cover of the defendant's letter, in response to the plaintiffs' of date Jan. 3, 1882, informing him of the sinking of the steamer, in which he tells them the shipment was not insured, for the reason that no instructions to insure had been given, and adds: "Refer to account sales rendered you and you will see that I never charged you insurance when your goods were shipped by railroad."

The only account sales the plaintiffs had ever received, upon which there were no charges of insurance, were the two sent with that letter. Referring to all received before, they would have found insurance charged.

The defendant's practice was not to insure by separate policies for each shipment, but he had an open policy, and the shipments by " all water" routes were considered insured from the moment of their departure, although he was not, as he could not be, advised of them at that moment. These previous shipments by all water routes were therefore covered by this open policy, when neither he nor the insurance company knew they were *en route*. If a loss had occurred, it would have been reported to the company in the monthly statements made according to custom. If instructions had been given to insure this particular shipment, the mode would have been simply to include it in the next monthly statement after the loss had incurred. The defendant was too honorable to include it, when the commercial custom and his own was to consider such shipments not insured.

But the plaintiffs had every reason to believe that this shipment was insured without instructions, since every shipment they had ever made to him had been insured without instructions. Insurance had always been charged. The only instances where it had not been charged were unknown to the plaintiffs until reclamation was made for this loss. When the practice or custom of a factor is to insure consignments of produce and this is brought to the knowledge of his consignor by uniform charges for insurance on his accounts rendered, he will be deemed to have continued that custom until he gives notice to the consignor of

the change, and is responsible for any loss consequent upon his failure to insure before such notice reaches the consignor.  Ralston vs. Barclay, 6 Mart. 649; Berthoud vs. Gordon, 6 La. 579; Strong vs. High, 2 Rob. 103; Story on Agency, 212.

The defendant insists that, even granting the correctness of this legal proposition, he is exonerated from responsibility because the usage of trade, and the mode of transacting this particular business, was not to insure on rail shipments, and he conformed to that usage, citing Story on Agency, § 199.

The custom is concisely stated by the defendant on the witness stand:  "Everything is covered by insurance that comes by boat to the City, nothing by rail except it is expressly ordered.  If it comes by boat, it is insured unless ordered not to be insured.  If it comes by rail, the custom I think all over the country—I know it is with us—is not to insure unless expressly ordered."

This shipment did not come to the City by rail alone, but the first part of the voyage was by water and the last by rail.  If the meaning is that no insurance was effected without special instructions whenever the mode of conveyance *into* the City was by rail, then the plaintiffs had the best reason to believe that the defendant's own usage was to insure their produce whether it came by river and rail, or by river all the way, because all the accounts that had been rendered them by the defendant, by the one route as well as the other, contained the charge for insurance.

Judgment affirmed.

### ON APPLICATION FOR REHEARING.

We have re-examined the facts of this case with every desire to relieve the defendant from an obligation which bears hardly upon him, in view of his perfect good faith and alleged conformance to a usage of trade.   We understood before as now that his construction of that usage was, that produce reaching the City by rail was not insured without special instructions.  This shipment, *quoad* the plaintiffs, was by boat as all their shipments had been, and all of them had been insured by the defendant without instructions save only this.  They could not know he had, or intended to have, a different rule when the produce started by river and came in by rail, unless he had informed them by a change in his accounts—the omission of any charge for insurance whatever, or other manner.  But there was no change in the accounts.   The insurance charge on the rice was insignificant in amount, but significant in shewing the plaintiffs that insurance was

145

effected for them by this river and rail route precisely as it had been by the all river route, and even at the same rates.

What reason, asks the defendant in his brief for rehearing, had the plaintiffs to believe that his own usage was to insure their produce whether it came by river and rail, or by river all the way? The reason that he had invariably insured every shipment they had ever made to him, whether by the one route or the other, and every account they had received from him contained the charges for such insurance, until this loss occurred and demand for the insurance was made. Not until then was an account sent them without charges for insurance, with the letter that declined paying the demand, and stating the reason therefor.

Conceding that the plaintiffs were bound to know the usages of trade, it is equally true that the defendant was bound by his own usage uniformly followed with these plaintiffs.

The rehearing is refused.